

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

50 BEALE ST., SUITE 7200
SAN FRANCISCO, CA 94105

REGION IX
CALIFORNIA

APR 1 4 2016

Cindy Marten
Superintendent
San Diego Unified School District
4100 Normal Street, Room 2219
San Diego, California 92103

(In reply, please refer to case no. 09-15-1027.)

Dear Superintendent Marten:

This letter is to advise you of the resolution of the above-referenced complaint against the San Diego Unified School District (District). Specifically, OCR investigated whether the District failed to appropriately apply its sexual harassment related policies when responding to an internal complaint concerning an incident involving two (b)(6);(b)(7)(C); (b)(6),(b) students at an elementary school (School) in the District.

OCR investigated the complaint under the authority of Title IX of the Education Amendments of 1972. Title IX and its implementing regulation, at 34 C.F.R. §106.31, prohibit discrimination based on sex by recipients of Federal financial assistance. The District receives Department funds and is subject to the requirements of Title IX and its implementing regulation.

Prior to the conclusion of OCR's investigation, and without admitting to any violation of law, the District expressed an interest in voluntarily resolving this case. On April 14, 2016, the District submitted a Resolution Agreement to OCR that commits the District to specific actions to address the concerns raised by the investigation. This letter summarizes the applicable legal standards, the information gathered during the investigation, and how the complaint was resolved.

## Legal Standards

The regulations implementing Title IX, at 34 C.F.R. §106.31, prohibit discrimination based on sex by recipients of Federal financial assistance. School districts are responsible under Title IX and the regulation for providing students with a nondiscriminatory educational environment. Sexual harassment is unwelcome conduct of a sexual nature and is a form of sex discrimination prohibited by Title IX. Sexual harassment can include unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature. Sexual harassment of a student can result in the denial or limitation, on the basis of sex, of the student's ability to participate in or receive education benefits, services, or opportunities.

The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.

www.ed.gov

P00889

EX. 45

Page 2 – (09-15-1027)

When a student sexually harasses another student, the harassing conduct creates a hostile environment if the conduct is sufficiently serious to interfere with or limit a student's ability to participate in or benefit from the school's program. The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical. Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe.

Under Title IX and the regulations, once a school district has notice of possible sexual harassment between students, it is responsible for determining what occurred and responding appropriately. The district is not responsible for the actions of the harassing student, but rather for its own discrimination in failing to respond adequately. A school district may violate Title IX and the regulations if: (1) the harassing conduct is sufficiently serious to deny or limit the student's ability to participate in or benefit from the educational program; (2) the district knew or reasonably should have known about the harassment; and (3) the school fails to take appropriate responsive action. These steps are the district's responsibility whether or not the student who was harassed makes a complaint or otherwise asks the district to take action.

OCR evaluates the appropriateness of the responsive action by assessing whether it was prompt, thorough, and effective. What constitutes a reasonable response to harassment will differ depending upon the circumstances. However, in all cases the district must conduct a prompt, thorough, reliable and impartial inquiry. If harassment is found, it should take reasonable, timely, age-appropriate, and effective corrective action, including steps tailored to the specific situation. The response must be designed to stop the harassment, eliminate the hostile environment, and remedy the effects of the harassment on the student who was harassed.

### Facts Gathered to Date

### Background

On May (b)(6), 2013, the complainant's son, (b)(6),(b)(7)(C) student at the School, reported to his father that he had been touched on his private parts by another (b)(6),(b)(7)(C) student (Student B) while in the boys' restroom. The complainant reported the incident to the elementary principal who spoke to each student and confirmed that the incident occurred as alleged. The principal then met with the complainant and reported that he would call child protective services. He provided the report to the parents. He also indicated that he asked (b)(6),(b)(7)(C) teachers to more closely monitor the students when they were in the restrooms.

The complainant confirmed for OCR that, per his request, the two students were separated into different classrooms for the subsequent school year. The complainant reported no other incidents of sexual harassment involving his son and Student B. He did report that his son witnessed Student B spanking another "new" student on the playground. He told OCR that he was seeking no remedies, such as counseling, for his

Page 3 – (09-15-1027)

son because he was not acting out, and he did not notice any change in his son's demeanor.

Internal Complaint of Discrimination

A year after the original incident, in May of 2014, the complainant filed an internal complaint about his dissatisfaction with the principal's response, using the District's Uniform Complaint Procedure (UCP). He filed the complaint because he believed that Student B should have been expelled and because he was not adequately told about what measures were taken with respect to Student B, as a result of the finding that the incident occurred, and not informed of his right to file a UCP complaint, which is something that the principal is required to do under the District's sexual harassment policy.

Shortly after complainant filed the complaint, the principal e-mailed him and explained that in May of 2013, he responded to the incident by investigating what happened, and conferencing with Student B's parents about what constitutes appropriate social interaction between students. He also stated he called child protective services and spoke to the classroom teacher about the incident and the need for greater supervision of students.

In September of 2014, the District responded to the complaint. The District concluded that the principal was correct in not applying its "zero tolerance policy" because it did not apply to elementary schools because elementary students do not have the relevant mental state for engaging in sexually harassing behavior. OCR notes that the District's policy is unclear on this point because it states that students must be suspended and/or expelled if found responsible for certain offenses, including sexual assault.

The complainant appealed the District's determination and submitted new allegations, including that the principal failed to provide him with a uniform complaint form when he reported the incident. As a result, the District interviewed additional witnesses and submitted a second report on October [illegible], 2014. The District concluded that the incident of a single occurrence of inappropriate physical contact did not raise possible sexual harassment. The report indicated that the incident appropriately prompted the principal to make a report to child protective services. The District further concluded that because of the age of the students, the conduct did not meet the standard for suspension or expulsion. Finally, the District concluded that the principal was not in error in not informing the complainant about the option of filing a uniform complaint because the conduct did not describe a possible violation of state or federal law, including harassment. The District found that there was no evidence to support that a safety plan had been put in place regarding Student B. In this regard, two of three witnesses denied that they had been counseled to monitor Student B more closely. The report concluded by recommending that the District clarify under what conditions the District's sexual harassment policy might apply to elementary-age children and that elementary principals receive training on how to respond to alleged incidents of inappropriate touching between elementary-age students and the applicability of disciplinary procedures.

Page 4 – (09-15-1027)

### OCR's Investigation of the District's Response to the Internal Grievance

OCR interviewed the District's general counsel (Counsel) who had met with the complainant to discuss his concerns, and guided the District's response to the internal complaint. Counsel acknowledged that she had concluded that a single incident of inappropriate touching did not describe possible sexual harassment because the conduct was not pervasive. In discussion with OCR, she acknowledged that this determination was based on an incorrect application of Title IX standards, because a single incident of sexual touching of [(b)(6),(b)(7)(C)] student could be severe and constitute sexual harassment.

Counsel confirmed that although the principal referred the matter to child protective services, per District policy, he did not apply the District's sexual harassment policies and procedures. Counsel told OCR that in order to be consistent with the requirements of Title IX, the principal should have treated the complaint as a complaint of sexual harassment, applied the District's sexual harassment policy and UCP procedures, documented his investigation, communicated his findings to the parents and offered a remedy for the victim. Counsel expressed a willingness to take specific actions to address the areas of confusion in the District's policy, and to conduct training specific to the elementary level.

On April 14, 2016, the District submitted the enclosed Agreement that is intended to, when fully implemented, resolve the concerns raised in this complaint. The Agreement requires the District to develop guidelines to ensure that elementary principals understand the process they must follow in responding at the site level to incidents of inappropriate touching and other types of sexual harassment that might occur between elementary-age students, including clarification of what constitutes sexual harassment and assault and when to apply the District's sexual harassment grievance procedure (Administrative Procedure 0112) with respect to sexual harassment complaints originating at the elementary level. Further, the District committed to train all elementary school principals and administrators and others at the District level who investigate sexual harassment complaints originating from elementary schools on these guidelines. The District will also arrange for OCR to provide training to all elementary level principals on general Title IX requirements. Finally, the District committed to revise all communications with parents to clarify how the District's sexual harassment policies apply to incidents at the elementary level.

Based on the commitments the District has made in the Agreement, OCR is closing the investigative phase of this case.

This concludes OCR's investigation of the complaint and should not be interpreted to address the District's compliance with any other regulatory provision or to address any issues other than those addressed in this letter. OCR is closing the investigation of this complaint as of the date of this letter, and notifying the Complainant concurrently.

Page 5 – (09-15-1027)

The District has agreed to provide data and other information, demonstrating implementation of the Agreement, in a timely manner in accordance with the reporting requirements of the Agreement. OCR may conduct additional visits and request additional information as necessary to determine whether the District has fulfilled the terms of the Agreement and is in compliance with Title IX and its implementing regulations with respect to this case. OCR will not close the monitoring of this Agreement until it has determined that the District has complied with the terms of the Agreement and is in compliance with Title IX.

If the District fails to implement the Agreement, OCR may initiate administrative enforcement or judicial proceedings to enforce the specific terms and obligations of the Agreement. Before initiating administrative enforcement (34 C.F.R. §§ 100.9, 100.10), or judicial proceedings to enforce the Agreement, OCR shall give the District written notice of the alleged breach and sixty (60) calendar days to cure the alleged breach.

This letter sets forth OCR's determination in an individual OCR case. This letter is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public.

Please be advised that the District may not harass, coerce, intimidate, or discriminate against any individual because he or she has filed a complaint or participated in the complaint resolution process. If this happens, the individual may file another complaint alleging such treatment.

Additionally, under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request. In the event that OCR receives such a request, we will seek to protect, to the extent provided by law, personally identifiable information, which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

OCR greatly appreciates the ongoing cooperation received from the District during the investigation and resolution of this case. If you have any questions, please contact Ava De Almeida Law, Investigator, at (415) 486-5513.

Sincerely,

*[signature]*

Sara Berman
Team Leader


Enclosure

San Diego Unified School District
Office for Civil Rights, U.S. Department of Education
Case Number 09-15-1027

### Resolution Agreement

In order to resolve the issues investigated by the U.S. Department of Education, Office for Civil Rights (OCR), under Title IX of the Education Amendments of 1972 and its implementing regulations, and without admitting to any violation of law, San Diego Unified School District (District) agrees to implement the provisions in this Resolution Agreement (Agreement).

#### Requirements

A. Guidelines

1. The District will develop guidelines for elementary school level principals so they understand the process they must follow in responding to incidents of inappropriate touching and other types of sexual harassment and assault involving students, and when to apply the District's sexual harassment grievance procedure (Administrative Procedure 0112) with respect to sexual harassment complaints originating at the elementary level. The guidelines must include definitions of sexual harassment and sexual assault.

2. By May 31, 2016, the District will provide OCR with a draft of the guidelines for review and approval and will adopt and disseminate the guidelines to elementary school principals within 30 days after approval from OCR.

B. Training

1. By July 31, 2016, the District will provide an outline of the training on the guidelines developed pursuant to paragraph A.1. and the name and experience of the trainers to OCR for its review and approval.

2. By July 31, 2016, the District will provide OCR with a list of names and titles of all staff expected to receive the training. The District will provide training to all elementary administrators, including all elementary principals and school and District administrators who are or may be responsible for investigating sexual harassment complaints at elementary schools.

3. By November 1, 2016, the District will deliver the training and provide OCR with a report describing and documenting the training, and a list of all staff members who were in attendance. The District will also provide a list of staff members not in attendance, with the date they will attend a make-up session, and such make-up session will be completed not later than December 1, 2016.

C. Parent notification

The District will revise all communication with parents (brochures, memoranda, websites, parent handbooks, etc.) to clarify how the District's sexual harassment policies and grievance procedures apply to incidents at the elementary level, and the range of

Page 2 – Resolution Agreement 09-15-1027

sanctions that will be considered for offending students and the types of support services and remedies that are available for students subjected to sexual harassment or assault. This specifically includes translated and oral interpretation of the guidelines as necessary to inform English Language Learners and Limited English Proficient parents/guardians/education rights holders in their respective languages consistent with Title VI.

By May 31, 2016, the District will provide OCR with a draft of the revised communications for review and approval. Within 60 days after OCR approves the communications, the District will adopt the communications and provide documentation that it has replaced every earlier communication with the new form.

D. Training on Title IX Requirements

District elementary school principals will participate in training provided by OCR on the requirements of Title IX (including definitions and examples of what constitutes sexual harassment and sexual assault) and the investigation of complaints of discrimination, on a date to be arranged by OCR and the District.

By July 31, 2016, the training will be conducted by OCR. The District will provide OCR with documentation to show who attended the training.

E. Monitoring

The District understands that OCR will not close the monitoring of this agreement until OCR determines that District has fulfilled the terms of this agreement and is in compliance with Title IX of the Education Amendments of 1972 and the regulations implementing the statute, which was at issue in this case.

The District understands that by signing this agreement, it agrees to provide data and other information in a timely manner in accordance with the reporting requirements of this agreement. Further, the District understands that during the monitoring of this agreement, if necessary, OCR may visit the District, interview staff and students, and request such additional reports or data as are necessary for OCR to determine whether the District has fulfilled the terms of this agreement and is in compliance with Title IX of the Education Amendments of 1972 and the regulations implementing the statute.

The District understands and acknowledges that OCR may initiate administrative enforcement or judicial proceedings to enforce the specific terms and obligations of this Agreement. Before initiating administrative enforcement (34 C.F.R. §§ 100.9, 100.10), or judicial proceedings to enforce this Agreement, OCR shall give the District written notice of the alleged breach and sixty (60) calendar days to cure the alleged breach.

_Cindy Marten_
Cindy Marten, Superintendent
San Diego Unified School District

9-13-16
Date